J-S22001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| W. P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| Y. M. | |
| Appellee | No. 86 EDA 2017 |

Appeal from the Order Entered December 8, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 1607V7140

BEFORE:  BENDER, P.J.E., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED JUNE 19, 2018**

Appellant, W.P., appeals *pro se* from the trial court's order, granting Appellee's, Y.M., request for a final, three-year Protection from Abuse (PFA) order.  We affirm.

The trial court summarized the procedural history and factual background of this case as follows:

**I. PROCEDURAL HISTORY**

Y.M. … filed a [PFA] Petition against [Appellant] on July 11, 2016.  Following an *ex parte* hearing that day, [Y.M.] was granted a full Temporary Protection From Abuse Order (Temporary Order) that prohibited [Appellant] from having any contact with [Y.M.]; directed Appellant not to abuse, threaten, stalk or harass [Y.M.] and evicted and excluded him from [Y.M.'s] home.  A trial was scheduled for nine days later.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The day before trial, counsel for [Y.M.] sent a letter informing this [c]ourt that Appellant was incarcerated at the State Correctional Institute (SCI) at Houtzdale. Because the Philadelphia Sherriff's Office does not transport state inmates to Philadelphia for PFA trials, the trial was continued for court staff to arrange for Appellant to participate in the trial by video conference.

At the next trial listing, counsel for [Y.M.] appeared and requested a continuance because [Y.M.] had just started a new job and was not able to be present. This [c]ourt granted a short continuance for eight days and the [c]ourt again arranged for Appellant to participate by video conference.

Trial began August 26, 2016, with Appellant participating *pro se* by video conference from SCI Houtzdale, and [Y.M.] and her attorney present in the courtroom. [Y.M.] testified and introduced exhibits and Appellant was given an opportunity to ask cross-examination questions. Appellant then testified and was cross-examined by [Y.M.'s] attorney. Because Appellant was not present in the courtroom to review [Y.M.'s] exhibits, the trial was bifurcated and the [c]ourt made arrangements for [Y.M.'s] exhibits to be sent to Appellant, and for Appellant to send his exhibits to the [c]ourt and to [Y.M]. The trial was scheduled to resume two months later.

In the interim, Appellant requested that he be provided with the notes of testimony from the first part of the trial and this [c]ourt granted that request. At the next trial listing, Appellant again participated by video conference. At the beginning of the hearing, Appellant informed the [c]ourt that he had attempted to file a "Petition for Private Criminal and Civil Contempt," but that his petition was not accepted for filing and was returned to him.[1] Without addressing any specific issues raised in the contempt petition, this [c]ourt informed Appellant on the record that his filing was not proper because defendants in PFA cases cannot file petitions for criminal or civil contempt of PFA orders issued against them. Appellant then made an oral motion for recusal, which this [c]ourt denied.

[1] Although the pleading was not accepted for filing, a copy of the petition was forwarded to this [c]ourt. In the contempt petition, Appellant sought to challenge the sanctions imposed against him in Department of Corrections (DOC) disciplinary proceedings. Specifically, he sought

reversal of those sanctions, monetary damages, and contempt findings against five DOC employees at SCI Houtzdale, a DOC employee at SCI Pine Grove, and the Chief Hearing Examiner at DOC.

Appellant next informed the [c]ourt that he was not ready to proceed because he had not yet received the notes of testimony from the prior hearing. This [c]ourt granted Appellant a continuance, rescheduled the hearing and arranged for court staff to send … Appellant the notes of testimony from the prior hearing.

When the trial resumed on December 8, 2016, Appellant again participated by video conference and was given an opportunity to present additional testimony and introduce exhibits. This [c]ourt also permitted Appellant an opportunity to ask [Y.M.] additional cross-examination questions.

At the conclusion of the hearing, this [c]ourt granted [Y.M.'s] request for a Final Protection From Abuse Order (Final Order) for three years. The Final Order prohibits [Appellant] from having any contact with [Y.M.]; prohibits Appellant from abusing, harassing, stalking, or threatening [Y.M.]; evicts and excludes him from [Y.M.'s] home; and directs that any and all correspondence sent to [Y.M.'s] house by Appellant must be addressed only to the children by name and not to [Y.M].

Appellant filed a timely notice of appeal. Four days later, this [c]ourt entered an order directing Appellant to file a concise statement of errors complained of on appeal (concise statement), and granted Appellant's request to receive free copies of the notes of testimony. Approximately two weeks later, this [c]ourt entered an order granting Appellant's request for an extension of time to file his [c]oncise statement, and directed that the statement be filed within twenty-one days. Appellant also requested court-appointed counsel, which this [c]ourt denied. Three weeks later, this [c]ourt entered an order granting Appellant's second request for an extension of time to file a concise statement. Appellant then filed a timely "concise statement."

## II. FACTS

Appellant is the estranged boyfriend of [Y.M]. They began a relationship in 2002, and they have three children together. Appellant is serving a state sentence of thirty-five to seventy-one years['] incarceration for his convictions for the following crimes that he committed against [Y.M.]: aggravated assault, causing or

risking a catastrophe, burglary, contempt of court for violation of a protection order, possession of an instrument of crime, recklessly endangering another person, and harassment. [Appellant's] sentence in that case includes a provision that he shall have no-contact with [Y.M].

While he has been incarcerated, Appellant has sent multiple letters to his children that also contained messages to [Y.M.] in which he threatened her with physical and sexual violence. [Y.M.] introduced into evidence a packet of those letters sent by Appellant, ostensibly to their children. Plaintiff's Exhibit 1. One letter was sent in an envelope addressed to "Team No Love" at [Y.M.'s] address and another was addressed to "[P.[1]] Children Team No Love." *Id.* A post-script on one letter read as follows:[2]

> **PS**: Since you refuse me any real contact, the hatred you will receive from them will be your own achievements not mine. But know I still Love you and forgive you for your **Treachery!!** But know you will have to get on your knees to pay **Homage** to the **KING.**—meaning- "**Front Door – Back Door – and The Port Hole, and it will be Unforgiving Without Comprimise, Sympathy or Empathy to Get Anything Out of The Royal Treasury and Your Still Getting <u>NOTHING</u>!**"
>
> P.S. You Couldn't HANDLE BEEFIE THEN, WHAT YOU GOING TO DO NOW—HA.HA.HA. HE MUST BE FED!! <u>NO COMPRIMISE</u>!!

*Id.*

[Y.M.] testified credibly that the language quoted above was specifically intended for her, that it was a threat to commit sexual violence against her and that "beefie" is Appellant's nickname for his penis. On the back of the same letter, Appellant wrote the following:

> My anger towards you has only made me stronger and more astute in all matters of life! I will never make the same

---

[1] We replace the children's last name here with an initial in order to protect their identities.

[2] Herein, we produce Appellant's communications to Y.M. verbatim from the trial court's opinion.

mistake again in life. Everything that you've done to me and my children will be returned as sure as god has put breath in my lungs! There is nothing anyone can do to stop the inevitable from happening to you!

*The irony of it all, it will not be by my hands!! <u>That's what makes it so special</u>!!

***Id.*** [Y.M.] testified that this statement was also a threat, and that she is still afraid of Appellant even though he is incarcerated. [Y.M.] was afraid that Appellant would have a third party harm her on his behalf, or that he might be released from prison and harm her himself.

In another letter that Appellant sent to their children, he included the following post-script that was also intended for [Y.M.] and which was intended to show her that he can still affect her life even though he is incarcerated:

Ps: So you don't think it's something you did or anyone else you know. It was my people that put poohde[3] in that new school, to show you, your nothing even while I'm locked away you **BUM BITCH!!!**

[Plaintiff's Exhibit] 1.

Appellant conceded that he was aware that he was subject to a no-contact order that prohibited him from having any contact with [Y.M.] as part of his criminal sentence, but claimed that a custody order that allowed him to write to the children superseded that order. This [c]ourt took judicial notice of a custody order from 2014 that permits [Y.M.] to edit and/or intercept communications between Appellant and his children. Appellant's position was that, "[t]he entire order states we have to communicate in order to deal with our children."[2] When asked if letters sent to his children contained messages to [Y.M.], Appellant's response was, "[i]t's partially to my children and it's - the second part is to [Y.M.] letting her know she wrong [*sic*]."

---

[2] The October 14, 2014[] order contained no provision permitting Appellant to communicate with [Y.M.] about the children.

---

[3] We are unable to discern from the record what "poohde" means.

Trial Court Opinion (TCO), 7/18/2017, at 1-8 (some original brackets and internal citations omitted; some brackets added; emphasis in original; unnumbered pages).

As the trial court mentioned, Appellant filed a timely notice of appeal from its order entering a final, three-year PFA order, and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Thereafter, the trial court issued a Rule 1925(a) opinion. Presently, Appellant raises the following issues for our review:

> **First Issue:** Whether the trial court abused it[s] discretion, when it granted Respondent Counsel a continuance without entering any appearance upon the record or serving Appellant with any notice of that appearance, in clear violation of Pa.R.Civ.P. … 261 [and] 1012?
>
> **Second Issue:** Whether [the] trial court denied Appellant his constitutional right of equal protection, right to petition, and due process of law under the U.S. Constitution [and] Pa. Constitution, when the trial court did not file or order the clerk to file two properly filed contempt motions?
>
> **Third Issue:** Whether the transcripts being altered denies Appellant … meaningful review on appeal?
>
> **Fourth Issue:** Whether [the] trial court err[ed] in finding that the evidence presented showed that Appellee was under reasonable fear of immediate serious bodily injury, while avoiding/ignoring pending contempt charges against [Y.M.] for violating a standing court order?

Appellant's Brief at 2 (unnumbered pages; some unnecessary emphasis omitted).

Initially, we must ascertain whether Appellant has properly preserved these issues for our review. In its Rule 1925(a) opinion, the trial court deemed

all of Appellant's issues waived because his Rule 1925(b) statement is not concise. **See** TCO at 9. It observed that Appellant's Rule 1925(b) statement "is six pages long and contains seventeen paragraphs. It contains four numbered issues with numerous other sub[-]issues and sub-sub-issues buried within the lengthy and rambling discussion of those issues." **Id.** It noted that, "[w]hile this [c]ourt has been able to excavate some coherent issues from Appellant's lengthy [Rule] 1925(b) statement, that pleading document does not comply with the requirement in Rule 1925(b) to file a **concise** statement of issues complained of on appeal." **Id.** (emphasis in original).

We acknowledge that Rule 1925(b)(4)(ii) sets forth that "[t]he Statement shall **concisely** identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). Further, "[t]he Statement should not be redundant or provide lengthy explanations as to any error." Pa.R.A.P. 1925(b)(4)(iv). Here, although Appellant's Rule 1925(b) statement is unnecessarily lengthy and not particularly easy to read, we do not believe it is so long and vague as to have impeded the trial court's review, and we note that the trial court did not find that Appellant filed it in bad faith. **See Mahonski v. Engel**, 145 A.3d 175, 182 (Pa. Super. 2016) (finding waiver where the appellants filed their statements in "bad faith, deliberately circumventing the purpose of Rule 1925(b) in violation of our Rules of Appellate Procedure"); **Hess v. Fox Rothschild, LLP**, 925 A.2d 798, 803-04 (Pa. Super. 2007) ("When a court has to guess what issues an appellant is

J-S22001-18

appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.") (citations omitted). Appellant's statement sufficiently identifies the following errors:

**The First Issue**: The inferred bias by [the trial court]: the case was allowed to continue without respondent's counsel filing the proper paperwork for his appearance in court….

**The Second Issue**: [The trial court] refused to issue a contempt order, when a properly filed petition was filed in the matter….

**The Third Issue**: There is a major problem with all transcripts, because words are missing and as well as changed from what was stated at all hearings….

**The Fourth Issue**: … If there is any evidence of abuse, it must be produced because anyone can say [they are] abused and without any evidence no abuse allegation can be substantiated. … [Y.M.] has not provided or produced any evidence to substantiate any abuse by [Appellant]…. [Appellant's] submission of evidence of … the contempt charges against [Y.M.] is the necessary proof of [her] manipulation of the courts and the criminal justice system.

Appellant's Rule 1925(b) Statement, 5/21/2017, at 1, 3, 4, 5 (unnumbered pages). In addition, the trial court was able to address these specific issues in its Rule 1925(a) opinion. Thus, we decline to find waiver on this basis.

However, we nevertheless deem Appellant's issues waived because his brief does not comply with Pa.R.A.P. 2119(a) and contains undeveloped arguments. Rule 2119(a) sets forth that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the

particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). In the case *sub judice*, Appellant does not divide his argument into as many parts as there are questions to be argued. Moreover, his entire argument section is 3½ pages long, and largely rehashes what occurred below in the trial court. He includes no citation to case law nor any meaningful, coherent analysis. ***See Commonwealth v. Hakala***, 900 A.2d 404, 407 (Pa. Super. 2006) ("Because [the appellant] fails to offer either analysis or case citation in support of the relief he seeks, we deem all of his questions waived."). Thus, we determine that all of his issues are waived as a result.

Notwithstanding, even if Appellant's arguments were not waived, we would conclude that all of his claims are meritless. First, with respect to his argument that the trial court abused its discretion by granting Y.M.'s counsel a continuance without counsel's entering any appearance upon the record or serving Appellant with any notice of that appearance, ***see*** Appellant's Brief at 2 (unnumbered pages), Appellant fails to show how this continuance prejudiced him.[4]

Second, the trial court did not deny Appellant his constitutional right of equal protection, right to petition, and due process of law under our federal

_____

[4] We note that the trial court told Appellant, "I don't know whether you were notified of [the prior continuance]. If you were not notified and because you were not notified you're not ready today, your remedy is to ask for a continuance and I'll give you more time … to do whatever you need to do, sir." N.T., 8/26/2016, at 7. Appellant elected to proceed to trial that day. ***Id.*** at 8.

- 9 -

and state constitutions by not filing his two contempt motions. *Id.* As the trial court observed, Appellant was not attempting to file a petition against Y.M., but instead Appellant "sought to use the pending PFA petition filed against him to ask th[e c]ourt to find various prison officials in contempt of a PFA Order to which they were not parties." TCO at 20. We are not convinced by Appellant's unintelligible, conclusory arguments regarding this issue, *see* Appellant's Brief at 5-7, and we agree with the trial court that Appellant would need to pursue his legal remedies against those individuals in a separate matter. *See* TCO at 20.

Third, with respect to any alleged errors in the transcription of the notes of testimony, Appellant fails to demonstrate that he properly preserved and pursued his objections to the transcript, and/or that any purported transcription error prejudiced him. *See* TCO at 23-25 (asserting that Appellant did not follow proper procedure by raising his objections to the notes of testimony in his concise statement).

Finally, we disagree that the trial court erred in finding that the evidence showed that Y.M. "was under reasonable fear of immediate serious bodily injury," while ignoring pending contempt charges against Y.M. for violating a

standing court order. *See* Appellant's Brief at 2.[5,6] The trial court aptly ascertained:

> In the present case, [Y.M.] testified credibly that she was afraid of Appellant.[7] It was [Y.M.'s] understanding that Appellant was prohibited from contacting her because she was his victim in a previous criminal case. Appellant's contention that the letters sent to [Y.M.] were intended only for his children and that any portions meant for [Y.M.] were for the purpose of co-parenting is preposterous. It was clear to this [c]ourt that Appellant was referring to sexual acts that he would subject [Y.M.] to, and those

_____

[5] The relevant statute defines abuse as "[t]he occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood: … (2) Placing another in reasonable fear of imminent serious bodily injury. … (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person … under circumstances which place the person in reasonable fear of bodily injury." 23 Pa.C.S. § 6102(a)(2),(5). "The court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff…." 23 Pa.C.S. § 6108(a). Finally, "[w]hen a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." *Karch v. Karch*, 885 A.2d 535, 536-37 (Pa. Super. 2005) (citations omitted).

[6] With respect to the standing court order purportedly violated by Y.M., we believe Appellant is referring to the 2014 custody order that allows him to write to his children, and permits Y.M. to edit and/or intercept these communications. *See* TCO at 7-8; *see also* Appellant's Brief at 5 (noting that the trial court took "judicial notice of Appellant['s] being able to contact his children").

[7] Indeed, as a result of Appellant's letters, Y.M. testified, "I'm afraid that something will happen to me. Either somebody may attack me or say he gets released from prison, I feel that he's going to come after me and I'll be harmed." N.T., 8/26/2016, at 33. She further explained that she is paranoid of "[b]eing attacked[,]" and that although Appellant is incarcerated, he "could meet somebody, make arrangements. He could still have a friend on the outside." *Id.* at 34.

- 11 -

acts "will be Unforgiving Without Compromise, Sympathy, or Empathy." Appellant's reference to having "[his] people" put Poohdie [*sic*] in a new school, and his statement that, "There is nothing anyone can do to stop the inevitable from happening to you! The irony of it all, it will not be by my hands," was reasonably taken by [Y.M.] as a threat to have her harmed by third parties.

When considered with the previous history of abuse, the fact that Appellant had been convicted of crimes of violence against [Y.M.]. and the totality of the circumstances, receipt of any of the quoted portions of Appellant's letters would have been sufficient to place [Y.M.] in reasonable fear of imminent serious bodily injury, which brings Appellant's conduct within the definition of abuse pursuant to subsection 6105(a)(2). Furthermore, when all of the letters are considered together, it is also clear Appellant engaged in a course of conduct that placed [Y.M.] in reasonable fear of bodily injury, which constitutes abuse pursuant to subsection 6105(a)(5).

TCO at 14-15. Accordingly, we determine that the evidence sufficiently shows that Appellant placed Y.M. in reasonable fear of imminent serious bodily injury and/or that Appellant knowingly engaged in a course of conduct that placed her in reasonable fear of bodily injury. ***See*** 23 Pa.C.S. § 6102(a)(2),(5). As such, even if properly preserved, we would deem all of Appellant's claims meritless

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/18

- 12 -